Good afternoon, your honors. David Zegman on behalf of Michael Kayser. I'd like to reserve a couple of minutes for rebuttal. I'm hoping that this argument isn't going to go 20 minutes. No, so we... I was going to say that really these time allotments don't always bear much resemblance to the length of time that's necessary. So we would hope you'd not be misled in the by the time allotted. I think it should easily be a 10 minute case, not a 20. Fair enough. I'm happy with that, in fact. I think it's a pretty easy case, too. It comes down to a bare legal issue, which is, should Mr. Kayser have been allowed to argue that his deductions, which were claimed on his 2000 tax return in relation to his A to Z income, when the government said you have to declare your A to Z income on your 1040 return, your personal return, should those deductions have followed. And the state of the record is, look, I'm not... this is not a sufficiency case. This isn't a can any reasonable fact find or find. It's a jury instruction case. And compared to the cases earlier, I'm way more than just a weak basis or a insubstantial. I've in the record that all Aspen Venture money, that's the corporate return, was from A to Z. That's ER 124 to 128. That all deductions claimed on the corporate return regarded A to Z income at same sites in the ER. That his tax preparer, Richard Stanzik, said that the deductions claimed by Mr. Kayser on his corporate return, the tax preparer, all these deductions regarded the A to Z income, the government said should be moved. And that the government's expert confirmed this, that the deductions claimed by Kayser were not unique to any corporate form. In other words, they were travel, utilities, entertainment, normal 1099 sort of deductions regarding income. So given that I have a basis in the evidence and that it is a legitimate defense, government tiptoes around this issue, but there's no question about it. The government has to prove a tax deficiency as part of a tax prosecution. Proving a tax deficiency is different than proving that there is undeclared income. You can have undeclared income and not have a tax deficiency. Indeed, I think that probably for most of my college years when I earned $1,500 to $2,000 as a TA, I didn't declare that money and I'm pretty sure I didn't owe any income on it just because of the standard deduction. And I couldn't be prosecuted for tax evasion because there wouldn't be a tax I could have thought, ha, ha, ha. I'm not going to declare this money. Government's not going to get their penny. But if I never owed him a penny, there's no tax deficiency. I can't be guilty of tax evasion. Absolute requirement. As your honors well know, the tax code is complicated and the saving grace we've given to it is that it's a specific intent crime. It's the most specific intent of specific intent crimes. You have to understand, you can have a good faith belief that what you're doing is correct. It can turn out to be wrong, still not guilty of tax evasion. So those are my issues. The only thing I wanted to highlight is that I raised this issue early on in the case. I brought this up in limine. I moved to have the government be precluded from arguing against the deductions because of what the case agent said to the grand jury. Grand juror asked case agent, what about deductions? Case agent says, and I'm paraphrasing, of course. That's not part of our theory. Our theory is that, you know, he has this unclaimed income. End of inquiry. I raised that. Government says, we're not going to talk about deductions. Then at the jury instruction conference, they blindside me. And maybe I should have known about the Miller case, but I didn't. They say, lucky loser doctrine. You can't argue this. We get an overnight recess for me to go research this, find out what it is and brief it. And I've made this argument to the district court. I made it in the new trial motion and I'm making it today. Tax deductions are a legitimate defense. And for the government to claim that the district court did not rule on this, I mean, I raised it in limine. I raised it at trial and I raised it in a motion for new trial. It's the same argument over briefs. I raised it. So that's pretty much the whole of my argument, unless court has questions. Thank you. Good afternoon, your honors. My name is George Aguilar with the United States Attorney's Office and for the Southern District of California, I represent the United States in this manner. The instruction requested stated if the defendant had unclaimed deductions, which would have offset his tax liability such that there was no tax due unknowing, then there is no tax deficiency. The problem we had with the instruction, the problem the district court had was with the word unclaimed. If you take that word out, then the deductions, certainly he's entitled to show the deductions reduced or eliminated tax deficiency. And that is essentially what the deficiency instruction to the jury on that element read. So the word unclaimed is necessary. In this particular case, the defendant did not have unclaimed deductions. He was able to claim and place on his tax returns all the deductions he was entitled to. And the government didn't contest those deductions. It's just that he placed them on the corporate return in 2000 and the corporate return in 1999. What he wanted to do and what he wanted to argue through this instruction was have the jury transpose these deductions, move them from year to year, return to return. That's not allowable under the law as Agent McGuire's declaration stated. And there was no factual basis in the record for that instruction as Judge Miller found in the Rule 30 conference discussion. Likewise, with that restriction, that is the deductions have to stay on the return in which they were claimed, there's also no error in the guideline calculation. The defense asked the court, essentially, to move the deductions from 1999 to eliminate the carryback, which worked back to eliminate the deficiency in 99, to forget about all that, keep them with the 2000 return, which somehow would have eliminated any deficiency and therefore reduced the guideline loss. That was an improper thing to ask the district court to do. The district court declined the invitation. It told the defendant in its ruling it was stuck with the deductions as claimed on the tax returns. And it was a proper decision. The defense was asking the district court to do something improper under the tax law. And lastly, on the grand jury... You moved the income. Why did you move the deductions to? Because the deductions were taken on behalf of a C corporation, Aspen Ventures. It wasn't an S corporation, it was a C corporation. And the deductions don't automatically flow from the corporate entity to the personal return, the 1040 return. There were some possibilities for that to occur that would have existed in the form of a loan from a shareholder or paid in capital, but those entries were left blank on the 99 and 2000 returns, further evidencing his intent that that wasn't his intent at all, to pay corporate returns with his personal funds. So that's why it's not transferable illegally, nor transferable from year to year. Are you suggesting that there should be a per se rule that once, in a criminal tax evasion case, once a defendant has claimed deductions or made a deductions on the Miller case? It is. It is. It's the Williams case and the Miller case, which the appellate court was very careful not to allow the defense to recharacterize claimed deductions, those that were already in existence, known to the taxpayer, known to the IRS. The defense decided on a number of cases, which also are good law, which states that those deductions that are unclaimed, those deductions that aren't used, can be used to reduce the tax deficiency to the point where, in certain circumstances, it might even eliminate that element and provide a complete defense to the crime. But that's not this case. The deductions were on the table, used by the defendant, they were used improperly in the corporate form to reduce the deficiency in 99 and in 2000. Thank you. I'll be brief, Your Honor, it's late in the day. Just a couple of points. The deductions aren't these free existing rationales that are, you know, out in the world. They regard the income. They are intrinsic to the income, not to the corporation. So while it is definitely the case that Mr. Aguilar makes a general statement that, yeah, usually with a C corporation, if a corporation has deductions, you can't just say, well, I own the corporation, they're now my deductions. But that's not the situation we have. What we have is income. The income created the deductions. They don't say one word. They've never explained how that's not true. Their expert testified that it was true. Mr. Stanzik, the accountant, testified that it was true. And all I need is a scintilla of evidence to be entitled to the deductions. This whole unclaimed thing, that the idea that the problem of my defense was I used the word unclaimed. Well, unclaimed is the language from the case law regarding the deductions that aren't on the return. Obviously, they're not claimed at that point. He's using it in a technical legal sense. I'm using it in its normal, everyday, easy for a juror to understand sense. What the specific deductions had issued for 2000 actually used to reduce the tax liability in 99? Yeah. I mean, I would have a problem with 99. It would make my tax, make my argument harder on that case. Thankfully looking at 2000 right now, that's because we hung 99. 99 was a hung jury on that count. But those, those deductions were actually, in fact, used to reduce tax liability. Who knows why the jury hung? They didn't tell me. I didn't ask. But they didn't convict. So, you know, whatever they thought the failing proof was. It's at least theoretically possible that they hung because of the deductions. It's possible, though, even with the deductions. In which case you would have used the deductions. You got a benefit. You got a hung jury. Well, I mean, I have a benefit. My client's in prison right now because he wasn't allowed to argue a defense against 2000. And I brought this up during. There are not enough deductions to take care of 99 and 2000, right? There's not enough deductions to take care of 99 and 2000, but I don't need it. So if you allocate part of them to 99, what are you left with in 2000? The technical tax argument is he wouldn't be able to use a carryback loss if he did the deductions in the way the government suggests. If you have a 1040, you can't do a carryback in the manner that Mr. Kaiser did it. You could only do a carryback if you had a corporation. So, yeah, you're right. I mean, I'd have a problem, a bigger hill to climb with regard to count one. But we're not here to talk about front one because count one, you got a hung jury on. So whatever reason the jury found is the reason the jury found. And all we're talking about is count two. And, you know, if the government wants to reindict, they can reindict and we can have, you know, the same trial again. Only he should be allowed to bring his defense to count two, the count of conviction. A couple of quick points about Miller. I made the sufficiency argument. It's still unaddressed. It's never been addressed. And the cases I cite from this court, from the Ninth Circuit, Elwert and whatnot, are much earlier in time. So even if Miller somehow was in conflict with the proposition I state, I got the earlier in time ones. So they control. And I also want to mention that, you know, I quote at least six other circuits that agree with this proposition. They state it clearly that deductions, you know, are a legitimate defense. So you'd be creating a clear and obvious circuit split were you to accept the government's position. I hope you do not. Thank you, Your Honor. Thank you, counsel. Thank you both very much. Case just argued will be submitted.
judges: Reinhardt, Kozinski, Ikuta